**MAISLIN INDUSTRIES, U.S., INC., et al., Plaintiffs,**

v.

**A.J. HOLLANDER COMPANY, et al., Defendants.**

No. 86–72415.

United States District Court, E.D. Michigan.

Oct. 20, 1986.

---

See also 50 B.R. 943.

Steven F. Alexsy, Detroit, Mich., for plaintiffs.

Eames, Wilcox, Mastej & Bryant by John W. Bryant, Detroit, Mich., for defendants.

## ORDER

COHN, District Judge.

The Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law regarding Bankruptcy Court jurisdiction over adversary proceedings proposing that the District Court find as a matter of fact that these adversary proceedings are related to the Maislin Bankruptcy cases and conclude as a matter of law that the District Court and the Bankruptcy Court have jurisdiction over them under 28 U.S.C. § 157 and § 1334. Defendants filed objections thereto. Oral argument was heard. The District Court adopted the Proposed Findings of Fact and Conclusions of Law for the reasons stated on the record.

IT IS ORDERED that the Proposed Findings of Fact and Conclusions of Law regarding Bankruptcy Court jurisdiction over adversary proceedings be and hereby are adopted by the District Court in total.

PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW REGARDING BANKRUPTCY COURT JURISDICTION OVER ADVERSARY PROCEEDINGS

STEVEN W. RHODES, Bankruptcy Judge.

On July 11, 1983, the debtors (collectively referred to as "Maislin") filed petitions for

reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.* Before then Maislin had been engaged in the intrastate, interstate and international transportation of freight. After filing the petitions, Maislin hired Carrier Credit & Collection, Inc. ("CCC") to audit its pre-petition freight charges to determine whether Maislin's customers had paid the lawful rates published in its tariffs. 49 U.S.C. § 10701, *et seq.* CCC concluded that in the three years prior to January 11, 1983, the defendants in these adversary proceedings had underpaid, and these separate adversary proceedings were filed to collect the underpayments.

In response to issues raised in some cases concerning withdrawal of the reference, District Court Judge Avern Cohn entered an order stating, "The Bankruptcy Judge is directed to report to the Court on the jurisdiction of the Bankruptcy Court to entertain each of these adversary proceedings."

## II.

The jurisdictional issues in this case arise because of the pre-petition loan agreements between Maislin and the Canadian Imperial Bank of Commerce ("CIBC"), and because the amount of CIBC's secured claim exceeds the value of the collateral. Under these agreements, CIBC's loans to Maislin were secured by virtually all of Maislin's property, including its account receivables.

The defendants contend that these cases are not within this Court's jurisdiction, because the collection of these receivables will benefit the bank rather than the debtors due to its pervasive security interest. Since there is no benefit to the debtors, it is argued, these adversary proceedings are not sufficiently "related to" the bankruptcy to give this Court jurisdiction, as required by 28 U.S.C. §§ 1334(b) and 157(a).

The debtors' position is that these adversary proceedings are related to the bankruptcy, and therefore this Court has jurisdiction. The debtors note that the receivables are property of the estate under 11 U.S.C. § 541 and argue that therefore they have pursued these adversary proceedings on their own behalf. The debtors further note that the recovery of the receivables is part of the reorganization plan, and argue that CIBC's security interest in these receivables is irrelevant to the jurisdiction question.

## III.

The jurisdiction of the Bankruptcy Courts is governed by 28 U.S.C. §§ 1334 and 157. Section 1334 describes the jurisdiction of the District Court in a bankruptcy case as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

\* \* \* \* \* \*

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

Thus, the District Court has jurisdiction only if these adversary proceedings arise under title 11, or arise in or relate to the Maislin bankruptcy cases.

28 U.S.C. § 157(a) describes the jurisdiction of the Bankruptcy Court as follows:[1]

---

**1.** Pursuant to 28 U.S.C. § 157(b), this Court has previously held in *Maislin Industries, U.S., Inc., et al. v. C.J. Van Houten E. Zoon,* 50 B.R. 943 (Bankr.E.D.Mich.1985), that these adversary proceedings are not core proceedings, because

Maislin's claims do not arise under the Bankruptcy Code, are independent of and antecedent to the bankruptcy petition, and are not integral to the restructuring of debtor-creditor rights.

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

## IV.

The scope of "related to" jurisdiction was addressed in the recent case of *Kelley, et al. v. Nodine, et al.,* 783 F.2d 626 (6th Cir.1986). In that matter, the underlying bankruptcy cases were filed by Salem Mortgage Company, a group of mortgage companies. In the adversary proceeding, the Attorney General of the State of Michigan alleged several claims for various statutory and common law mortgage loan violations. The suit concluded with the Bankruptcy Court's approval of a consent judgment involving the debtors, a class of mortgagors, and a class of assignees of the mortgages. The judgment reformed the mortgages and acted as an accord and satisfaction of all the mortgagors' claims, but it left the assignees free to litigate their claims against the debtors.

On appeal from the Bankruptcy Court's approval of the consent judgment, the District Court held it lacked jurisdiction, because the suit was not sufficiently "related to" the Salem Mortgage bankruptcy case. *Kelley v. Salem Mortgage Co.,* 41 B.R. 420 (E.D.Mich.1984).

In its review of the jurisdiction issue, the Court of Appeals thoroughly reviewed the legislative history of 28 U.S.C. § 1334(a) and (b) and its predecessors, and then determined:

> The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.

**2.** 11 U.S.C. § 541 provides:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an

Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." *In re General Oil Distributors, Inc.,* 21 B.R. 888, 892 n. 13. (Bankr.E.D.N.Y. 1982) (citations omitted). Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy.'" *Id.* (citing *Mazur v. U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981) (emphasis in original)). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws.

783 F.2d at 633-34.

Reviewing the settlement, the Court noted that it released the debtors from most claims, obligated the debtors to pay civil penalties, fixed the priority of that civil penalty, and affected the debtor's liability to the investors. Thus, the Court held that the dispute was sufficiently related to the bankruptcy case and therefore was within the broad scope of "related to" jurisdiction.

## V.

Given the rejection of the narrow view of bankruptcy jurisdiction by the Court of Appeals for the Sixth Circuit in *Kelley v. Nodine, supra,* this Court must likewise reject the defendants' position on this issue, for the following reasons:

▪ First, when the petition was filed, the receivables were property of the estate under 11 U.S.C. § 541(a)(1)[2], *Atlas Auto-*

estate. Such estate is comprised of all the following property, wherever located and by whomever held:

*mation, Inc. v. Jensen, Inc.*, 42 B.R. 246 (Bankr.E.D.Mich.1984); *First National Bank of Louisville v. Hurricane Elkhorn Coal Corporation II*, 19 B.R. 609 (Bankr. W.D.Ky.1982), *adhered to* 20 B.R. 631 (Bankr.W.D.Ky.1982), *remanded on other grounds*, 32 B.R. 737 (W.D.Ky.1983); *In re Hudson Valley Ambulence Service, Inc.*, 11 B.R. 860, 862–63 (Bankr.S.D.N.Y.1981). This is so despite the CIBC's claimed security interest. *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *Brown v. Dellinger*, 39 B.R. 83 (N.D.N.Y.1983), *aff'd*, 734 F.2d 119 (2nd Cir.1984); *NLT Computer Services Corporation v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir.1985). And no post-petition event has undermined that property interest.

Second, the receivables will remain property of the estate until either the automatic stay of 11 U.S.C. § 362 is lifted and CIBC obtains the receivables under applicable non-bankruptcy law, or until CIBC obtains them pursuant to a provision to that effect in a reorganization plan. *Cf.* 11 U.S.C. § 1123(a)(5)(D).

Third, the debtors' petition vested this Court with jurisdiction over all of the debtors' property, including these receivables. 28 U.S.C. § 1334(d). And, because these receivables remain property of the estate, the Court's jurisdiction over them must continue.

Fourth, because the receivables are property of the estate, the debtors are obligated to administer them in the best interest of the creditors pursuant to 11 U.S.C. §§ 1107(a), 1106(a)(1), 704, 323(a). *See also: 5 Collier on Bankruptcy*, ¶ 1106.-01[4].

Fifth, the validity of CIBC's claimed security interest has never been determined. Clearly it often happens that a claimed security interest is invalidated for a wide range of procedural and substantive reasons. In fact, in this case, the debtor and the creditor's committee raised a sufficient question concerning CIBC's security

interest that CIBC was persuaded to release its lien in the receivables in settlement of the issue.

The defendants vigorously argue that no such post-petition agreement can vest jurisdiction in this Court. However, that argument begs the true question—whether the Court had jurisdiction over the receivables when the bankruptcy cases were filed, before CIBC agreed to release its lien. Rather, the post-petition events in this case illustrate one of numerous scenarios in which the proceeds of the liquidation of property will be distributed to creditors other than the creditor claiming a security interest in that property. This firmly demonstrates that the liquidation of secured receivables is "related to" the bankruptcy and comes within the Bankruptcy Court's jurisdiction when the petition is filed.

Finally, it must be noted that the defendants' position would require the debtors, as the owners of this property with fiduciary obligations to their creditors, to pursue these receivables in numerous state and federal courts around the country, with the attendant delays, inefficiencies and inconsistent results. Such a consequence seriously undermines the primary goal of a liquidation bankruptcy—the prompt, efficient, orderly liquidation of the debtors' assets for the benefit of all creditors, followed by distribution according to the creditors' respective priorities. *See: Kelley v. Nodine, supra*, 738 F.2d at 633 n. 18; 1 *Collier on Bankruptcy*, ¶ 3.01[1][a][iv] (15th ed. 1985).

Therefore, the Court proposes that the District Court find as a matter of fact that these adversary proceedings are related to the Maislin bankruptcy cases, and conclude as a matter of law that the District Court and the Bankruptcy Court have jurisdiction over them under 28 U.S.C. §§ 157 and 1334.

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable

interest of the debtor in property as of the commencement of the case.