In re Tom DAVIS & Gayle Davis, H & W, d/b/a Tom Davis Construction, Debtors.

Tom DAVIS & Gayle Davis, H & W, d/b/a Tom Davis Construction, Plaintiffs,

v.

INTERNAL REVENUE SERVICE, an Agency of the United States Government, and the Puget Sound National Bank, Defendants.

Bankruptcy No. 82–01847T.

Adv. No. A82–0550.

United States Bankruptcy Court,
W.D. Washington,
at Tacoma.

Oct. 24, 1983.

Noel P. Shillito, Tacoma, Wash., for plaintiffs.

James A. Nelson, TC–IRS, Seattle, Wash., for I.R.S.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION

ROBERT W. SKIDMORE, Bankruptcy Judge.

This matter came on regularly for hearing on August 17, 1983 before the undersigned judge of the above entitled court. Plaintiffs' complaint prayed for an injunction against the Internal Revenue Service (IRS) and the Puget Sound National Bank (PSNB) forbidding these defendants from generally disposing of a bank account with PSNB. The plaintiffs were represented by Noel P. Shillito, the IRS was represented by James A. Nelson, Special Assistant to the United States Attorney. After considering the record and the parties' memoranda, the court makes the following:

### FINDINGS OF FACT 1.

1. As of September 13, 1982, the plaintiffs/debtors, Tom and Gayle Davis, d/b/a Tom Davis Construction, were indebted to the IRS in the approximate amount of $41,420.00.

2. This indebtedness to the IRS represented unpaid individual income tax liability for the tax years 1977 through 1981.

3. On September 14, 1982, the IRS caused a notice of levy to be served on PSNB for all property, rights to property, money, credits and bank deposits in PSNB's possession and belonging to Tom Davis and all other obligations owing to Tom Davis.

4. At the time the notice of levy was served, September 13, 1982, PSNB had in its possession a bank account belonging to the plaintiffs/debtors in the amount of $1,899.76.

5. The plaintiffs/debtors filed a petition under Chapter 11 of the United States Bankruptcy Code on September 15, 1982.

6. Prior to the filing of the petition in bankruptcy, September 15, 1982, the funds on deposit with PSNB and subject to the notice of levy served upon PSNB were not released to the IRS.

From the foregoing Findings of Fact, the court makes the following:

## CONCLUSIONS OF LAW

The parties' memoranda present two issues before this court. First, whether § 542(a) of the United States Bankruptcy Code authorizes a turnover to the estate, property of the debtor which was subject to a pre-petition notice of levy by the IRS. Secondly, in deciding whether to authorize a turnover pursuant to § 542(a) should a distinction be made between tangible and intangible property, specifically cash.

An analysis of these issues requires an examination of the recent case of *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In *Whiting,* the IRS seized a corporation's personal property to satisfy a tax lien. The next day the taxpayer filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The issue as stated by Justice Blackmun was whether § 542(a) authorized a Bankruptcy Court to subject the IRS to a turnover with respect to the seized property.

The *Whiting* court began their reasoning by stating that the IRS, by virtue of its tax lien, held a secured interest in the Whiting property. *Whiting, supra,* —— U.S. at ——, 103 S.Ct. at 2311, 76 L.Ed.2d at 520. Therefore, whether § 542(a) generally authorizes the turnover of property seized by a secured creditor prior to commencement of a Chapter 11 case was crucial to the issue before the court. In addressing this question the court reviewed congressional reports concerning reorganization. Congress presumed that the assets of the debtor, if used in rehabilitation, would be more valuable than if liquidated. *Id.* —— U.S. at ——, 103 S.Ct. at 2312, 76 L.Ed.2d at 521, citing HR Rep No. 95–595 p. 220 (1977), U.S.Code Cong. & Admin.News 1978 p. 5787. Additionally, reorganization would have little chance without the essential property of the business included in the estate. For these reasons, all of the debtors' property must be included in the debtors' estate to facilitate reorganization. *Id.* This includes property of the debtor in which a creditor has a secured interest. *Id,* citing HR Rep No. 95–595, p. 182 (1977).

■ It is recognized by the *Whiting* court that § 542(a) allows property to be brought into the estate even though the debtor did not have a possessory interest in the property at the time of commencement. *Id.* —— U.S. at ——, 103 S.Ct. at 2313, 76 L.Ed.2d at 522. This "turnover" is allowed if the property is such that it may be utilized under § 363 of the Code or may be claimed exempt under § 522 by the debtor. Section 363 provides for the use, sale or lease of the "property of the estate" by the trustee or debtor in possession. The "property of the estate" is defined by § 541 as basically all legal or equitable interests of the debtor in property at the commencement of the case. Given the broad scope of the reorganized estate, property of the debtor repossessed by a secured creditor falls within § 542(a) and may therefore be drawn into the estate. *Id.*

Having concluded that the reorganized estate includes property of the debtor which has been seized by a creditor prior to the filing of a petition, the court saw no reason for a different result when the IRS is the creditor. *Id.* —— U.S. at ——, 103 S.Ct. at 2315, 76 L.Ed.2d at 524. Therefore, the Court affirmed the Court of Appeals decision that a turnover order could be issued against the IRS.

Cases confronted with this issue prior to *Whiting* are split in their decisions. Generally speaking, those cases which found for the IRS reasoned that the pre-petition levy by the IRS placed the property beyond the reach of a trustee or debtor in possession and was therefore not within the estate. This reasoning is primarily based upon the

opinion in *Phelps v. U.S.,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). *See, Matter of Bristol Convalescent Home,* 12 B.R. 448 (Bkrtcy.Conn.1981). *Phelps* states that notice of levy and demand are equivalent to seizure. *Phelps, supra,* 421 U.S. 330, p. 337, 95 S.Ct. 1728, p. 1732, 44 L.Ed.2d 201. Therefore, the *Phelps* court held that the pre-petition levy in that case gave the IRS "full legal right" to the money levied upon in the possession of a third party. *Id.*

*Phelps* has been cited for the proposition that by filing its notice of levy, the IRS had legally "seized" monies levied upon. *Diflorio v. U.S.,* 30 B.R. 815, 10 B.C.D. 1017 (D.C.N.Y.1983). *Diflorio* involved a pre-petition levy on a checking account by the IRS for unpaid taxes. The *Diflorio* court held that the debtor had no interest in the bank account after the IRS levied upon it. *Id.* 30 B.R. 815, at 1019. This conclusion by the *Diflorio* court expressly relied on the *Phelps* case. *Id.* 30 B.R. 815, at 1019, 1020.

The IRS in the instant case also relies on *Phelps.* It cites *Phelps* as having dealt with intangible property and having held that the service's pre-petition levy deprived the debtor of a possessory interest in the property and, therefore, the assets were not a part of the estate. (See defendant's memorandum p. 4). It also contends that *Phelps* was merely held inapplicable in *Whiting* because *Phelps* dealt with intangible property.

The *Whiting* court did address *Phelps.* Although the Court did not expressly overrule Phelps it appears that the Court did more than merely hold it "inapplicable" because it dealt with intangible property. *Phelps* specifically involved the issue of a bankruptcy court's summary jurisdiction over property of a debtor which is not in his possession. *Whiting* held *Phelps* not controlling primarily because the Code abolished the distinction between summary and plenary jurisdiction. *Whiting, supra,* ––– U.S. p. ––– n. 13, 103 S.Ct. p. 2314 n. 13, 76 L.Ed.2d p. 523 n. 13(4b). The issue of summary or plenary jurisdiction was so prevalent in *Phelps* that the abolishment of the distinction seemingly causes *Phelps* to lose its authority to post-Code issues.

*Whiting* also discussed *Phelps* in relation to the enforcement provisions of the IRS Code, 26 U.S.C. §§ 6321–6326. The Court stated that these provisions "do not transfer ownership of the property to the IRS." *Id.* ––– U.S. at –––, 103 S.Ct. at 2316, 76 L.Ed.2d at 525. The court recognized, however, that it could be argued that dictum in *Phelps* suggests the contrary. *Id.* n. 18. The dictum the Court is referring to is language in *Phelps* which states that the levy gave the IRS "full legal right" to the monies levied upon. *Phelps, supra,* 421 U.S. at 337, 95 S.Ct. at 1732. This language, however, is merely a restatement of the proposition that the levy gave the IRS sufficient possessory interest to avoid the Bankruptcy Court's "summary jurisdiction." *Whiting, supra,* ––– U.S. at ––– n. 18, 103 S.Ct. at 2316 n. 18, 76 L.Ed.2d at 525 n. 18. This proposition was based on the determination in *Phelps* that the levy transferred constructive possession to the IRS, thereby ousting the jurisdiction of the Bankruptcy Court. The proposition is now irrelevant due to the expanded jurisdiction afforded the Bankruptcy Courts under the Code. *Id.* In effect, the *Whiting* court expressed a view that *Phelps* itself is irrelevant since the primary issue of the case was the question of summary jurisdiction which has been abolished by the Code. In light of this reasoning, it would appear that any reliance based on *Phelps* to support a contention that a pre-petition levy by the IRS, in and of itself, deprives the estate from the levied upon property is not well founded. The reasoning in cases such as *Diflorio, supra,* which places substantial reliance on *Phelps* is therefore questionable.

■ The "notice of levy" served upon PSNB sheds light upon this issue. It prescribes that all property, rights to property and money in PSNB's possession and belonging to the taxpayer Davis are levied upon *for payment* of the tax; *demand* is made on PSNB for the amount necessary to pay this tax liability; and checks or money orders should be *made payable* to the IRS.

(emphasis added). This language indicates that more is required than merely serving the notice of levy and suggests that a payment or release of the funds by the bank is necessary. Payment by PSNB has not been made and there is no evidence of any check or money order made payable to the IRS. Additionally, 26 U.S.C. § 6332(a) contains a similar requirement which indicates that payment is crucial. It states that any person in possession of *property subject to levy, upon which levy has been made, shall, upon demand, surrender* such property. (emphasis added). Surrender of the property by PSNB has not occurred. The monies are still on deposit at PSNB as they were when the petition was filed. Therefore, debtors' rights in the monies were not totally extinguished merely by the IRS serving a notice of levy.

The view that the notice of levy by itself is not sufficient to extinguish the debtors' rights in the property is shared in the case of *In Re Dunne Trucking Co.*, 32 B.R. 182 (Bkrtcy.Iowa 1983). *Dunne* dealt with the identical issue and similar facts presented herein. Upon assessing certain taxes against the taxpayer, the IRS served a notice of levy on a bank claiming all the funds of the taxpayer on deposit with that bank. On the following day the taxpayer filed a petition for bankruptcy. It was not until subsequent to this filing that the bank issued a check to IRS. After reviewing the Internal Revenue Code, the court determined that notice of seizure as required by 26 U.S.C. § 6335(a) is a limitation on the service's levy authority and that a levy is not considered complete unless a notice of seizure is sent to the owner or holder of the rights to the property levied upon. *Id.* at 188. Therefore, a notice of levy, by itself, did not extinguish the debtor's right in the checking account. *Id.* at 185. The checking account became property of the estate upon the filing of the petition and was subject to the turnover provision under § 542 of the Code. *Id.*

The importance of pre-petition payment to a pre-petition notice of levy by the IRS was recognized in the case of *In Re Debmar Corp.*, 21 B.R. 858 (Bkrtcy.Fla.1982). In *Debmar* there was a notice of levy for unpaid taxes served upon a corporation which owed funds to the debtor and a bank in which debtor had an account. Service was made on November 6, 1981. The debtor filed a Chapter 11 petition on November 13, 1981. There was a check dated November 10, 1981 from the corporation to the IRS and evidence that the bank had paid the amount in the debtor's account *prior* to petition. Both entities had surrendered the property subject to the levy in their possession to the IRS before commencement of the Chapter 11 case. Relying on *Whiting Pool* (674 F.2d 144, 2nd Cir.1982) and *Bristol Convalescent Home, supra,* the court concluded that a pre-petition levy on debts that was not paid pre-petition does not divest the debtor of ownership of the debts and bank accounts and thus, the accounts receivable and bank accounts were property of the estate. *Debmar, supra,* at 860. The effect of a pre-petition payment by the bank to the IRS, however, was to discharge the bank's liability to the debtor pursuant to 26 U.S.C. § 6332(d). Therefore, when the petition was filed there was no bank account balance in the debtor's name and thus the nonexistent bank accounts could not become property of the estate. *Id.* at 860. In determining when the transfer to the IRS occurred, the court concluded that the date the bank drew a check payable to the IRS and constructively delivered it by putting it in the mail was the date of transfer. *Id.* n. 4.

As discussed above, the *Whiting* court stated that the enforcement provisions of the IRS Code, 26 U.S.C. §§ 6321–6326, do not transfer ownership of the property to the IRS. *Whiting, supra,* —— U.S. at ——, 103 S.Ct. at 2316, 76 L.Ed.2d at 525. The court went on to say that §§ 6331 and 6332 of the IRS Code are procedural devices available to the IRS to protect and satisfy its liens. They do *not* determine the service's rights to the seized property but are merely provisional remedies which bring the property into the Service's legal custody. *Id.* —— U.S. at ——, 103 S.Ct. at 2316, 76 L.Ed.2d at 526. Inherently necessary to

fulfill these sections is the release of the property by the party in possession to the IRS. This has not occurred in the instant case.

The IRS in the instant case places importance on the distinction between tangible and intangible property. It contends that *Whiting* is distinguishable because it dealt with tangible property and not intangible as is the case herein. The basis for the Services' contention is that the rights and provisions of the IRS Code applicable to seizure and sale are always applicable to tangible property but may not be applicable to intangible property. (See defendant's memorandum page 5). It specifically refers to the *Whiting* court's recognition of a debtor's right to notice of sale and seizure, 26 U.S.C. § 6335(a), that ownership is transferred by the sale, 26 U.S.C. § 6339(a)(2) and that a debtor has a right to surplus proceeds from the sale, 26 U.S.C. § 6342(b). The IRS feels that because cash, an intangible, does not require a sale upon seizure the distinction between the two types of property is of the utmost importance. The IRS Code, however, does not make any distinction between tangible and intangible property. Intangible property as defined by *Black's Law Dictionary* includes stocks, bonds, promissory notes and franchises. Obviously these intangibles would require a sale if seized.

This court recognizes that a sale is not possible when the property is cash or a cash equivalent. This characteristic of cash, however, does not cause the taxpayer/debtor to lose all his rights in the cash upon the notice of levy by the IRS. The Internal Revenue Code provides that as soon as practicable after seizure of property, a notice of seizure must be sent. 26 U.S.C. § 6335(a). The *Dunne* court also recognized this and held that since the debtor's account in cash had not been seized, and therefore a notice of seizure cannot be sent, the levy effected by the notice of levy, was not complete. *Dunne Trucking Company, supra* at 188.

Additionally, the *Whiting* court's review of the congressional goal of encouraging reorganizations also necessitates a conclusion that the distinction is irrelevant. If the monies are needed to facilitate the rehabilitation of the business then they should also be included in the estate. Simply because property is intangible would not exclude it from the congressional goal of reorganization.

Having concluded that *Phelps* is not dispositive of this case and that the distinction between tangible and intangible is not relevant, the basic question remains whether or not the monies on account with PSNB are part of the estate. It was recognized in *Whiting* that both the House and Senate Reports on the Code indicate that the scope of § 541(a)(1) is broad. *Whiting, supra,* —— U.S. at ——, 103 S.Ct. at 2313, 76 L.Ed.2d at 522. This court finds that the pre-petition notice of levy by the IRS did not extinguish all of the debtors' rights in the property levied upon. Those remaining rights of the debtor in the property were sufficient to cause the levied upon property to become a part of the estate upon the filing of the petition in Bankruptcy.

It should be noted that while the IRS is subject to turnover under § 542(a), it also receives the benefits of § 363. Section 363 prescribes that there be notice and hearing before cash collateral can be used. The IRS may request that the debtor in possession provide adequate protection. Therefore, it is

ORDERED, ADJUDGED AND DECREED that plaintiffs' complaint for injunction is hereby granted and it is further

ORDERED that this decision shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure; and it is further

ORDERED that the attorney for the debtors shall prepare a judgment in accordance with the above noted decision and note said judgment for presentation within ten days of the issuance of this decision.